In re the NATIONAL ASSOCIATION OF PROFESSIONAL MARTIAL ARTISTS, INC., International Ikon, Inc., Debtors.

Nos. 8:03–bk–18679–ALP,
8:03–bk–18680–ALP.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

July 12, 2005.

Chad S. Bowen, Jennis & Bowen, PA, Tampa, FL, for National Association of Professional Martial Artists Inc. and Debtors.

## ORDER ON THIRD AMENDED APPLICATION FOR ALLOWANCE OF BREAK–UP FEES AND EXPENSES AS AN ADMINISTRATIVE EXPENSE CLAIM (Doc. No. 150)

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTERS under consideration in the jointly administered Chapter 11 cases of National Association of Professional Martial Artists, Inc., (NAPMA) and International Ikon, Inc. (Ikon) are: (1) the Third Amended Application for Allowance of Break-up Fees and Expenses as an Administrative Expense Claim (Applica-

tion) (Doc. No. 150); (2) an Objection to the Application filed by the Office of the United States Trustee (Trustee) (Doc. No. 153); (3) an Objection to the Application filed by Century Martial Arts, Inc. (Century) (Doc. No. 152); and (4) Ikon's Joinder in Century's Objection to the Application (Doc No. 160). The Application was filed only in the case of Ikon. (Case No. 8:03–bk–18679–ALP).

The facts relevant to the matters under consideration, as appear from the record, are as follows.

On September 9, 2003, Ikon and NAP-MA filed their respective Petitions for Relief under Chapter 11 of the Bankruptcy Code. On November 13, 2003, each of the Debtors filed a Motion to sell through an auction all their respective assets. The Motion recited, inter alia, that World Black Belt, Inc. (WBB) submitted a bid as a "stalking horse" and requested authority to conduct an auction and pay WWB a break-up fee of three percent (3%) of the ultimate purchase price obtained to be paid when the sale was confirmed.

On December 15, 2003, the Court entered an Order and approved the bid procedure with the proviso that the break-up fee as requested in the Motion is disapproved. The Order further provided that "the Court may consider a reimbursement for the actual necessary costs to the extent they provide a benefit to the Debtor's estate." The allowance if made is predicated upon a specific finding by the Court that the costs for which reimbursement are sought were: (1) actual and necessary for the preservation of the Debtor's estate within the meaning of 11 U.S.C. § 503(b); and (2) a substantial benefit to the Debtor's estate; and (3) the request was reasonable and appropriate in light of the size and nature of the proposed sale of the purchased assets and the efforts which have been expended by WBB. The December 15, 2003, Order further provided that any allowance for break-up cost, in any event, shall not exceed the sum of $33,000.00.

The auction was conducted as scheduled, at which time WBB and Century were the only competing bidders. The assets were ultimately sold to Century whose successful bid was $1,660,000.00, for the combined assets of both Debtors.

On February 20, 2004, the Court entered its final Order and approved the sale without resolving the request for break-up fees or expense reimbursements filed by WBB. On January 31, 2005, the Court entered an Order and confirmed the liquidation plans filed by both Debtors. (Doc. No. 285). The Order of Confirmation directed a substantive consolidation of the two estates and the Application was considered by the parties to be a request for allowance jointly against both Debtors.

The Application seeks legal and other professional fees and expenses in the total amount of $74,486.69. WBB characterizes these fees and expenses as "break-up fees" and expenses and as a claim for "substantial contribution" to the Debtors' bankruptcy estate pursuant to 11 U.S.C. § 503(b)(3) and (4). The total amount sought is composed of various categories of services and expenses: $65,725.50 for legal fees and $956.84 expenses, $7,055.00 for professional fees of an auditing firm, as well as additional expenses in the amount of $749.35, which are not a result from the services provided by the legal and non-legal professionals.

Attached to the Application were invoices with time entries generated by two law firms; Patton Bogg, L.L.P. (general counsel of WBB) and Hill, Ward & Henderson, P.A. (WBB's local counsel). The invoices attached to the Application reflect the professional services rendered by Patton Boggs, L.L.P., for which compensation is being sought and services was

performed during the period of September 22, 2003, through January 30, 2004. According to the invoices, the services rendered by Hill, Ward & Henderson, P.A. were performed between October 3, 2003, through January 26, 2004. The time entries on the invoices contain some detail describing the services but there is no special allocation of the charges for each of the categories of the services rendered. There is no delineation of time expended by category of the services.

As noted earlier, the Application is challenged by Century who objects to any allowance contending that the actions of WBB did not provide any benefit to the Debtor's estate. In fact, it decreased the value of the Debtors' assets. Century also alleges, although not directly, that in fact there was a collusive bidding between WBB and an entity known as J.D. Fitness Enterprises, Inc. (Fitness). According to Century, the conduct of WBB chilled the sale by discouraging Fitness from bidding.

The United States Trustee challenges the Application on three distinct grounds: (1) The allegations of Century raised genuine questions of fact relevant to the reasonableness and appropriateness of any award either as a break-up fee or reimbursement for "substantial contribution"; (2) WBB failed to establish that it is a "creditor" thus, as a matter of law is not entitled to any compensation for substantial contribution under Section 503(b)(3) and (4); (3) The time records attached to the Application failed to establish that services for which reimbursement is sought produced any specific benefits to the estates and as submitted does not support the determination of the reasonableness of the hourly billing.

It should be pointed out at the outset, as noted earlier, that the Order approving the auction sale expressly disapproved any allowance for a break-up fees and limited the right for reimbursement to actual and necessary costs of preserving the Debtors estate within the meaning of 11 U.S.C. § 503(b); being of substantial benefit to the estate; and reasonable in light of the size and nature of the proposed sale. Most importantly, the Order also provided specifically that any award for fees may not exceed the sum of $33,000.00.

■ It should be evident from the foregoing that it is unnecessary to discuss and to consider the request for break-up fees and the request for allowance pursuant to Section 503(b). This is so because this Court is satisfied that no allowance can be made under this Section for administrative expense because this Section of the Code only authorizes and allows such expenses to a creditor. This record is totally void of any evidence that WBB was ever a creditor of these two Debtors.

■ Next, it is also evident from this record that no allowance could be made in excess of the allowance as indicated earlier. Therefore, the application by the law firm of Patton Boggs, Inc., which is in the amount of $64,725.50 for legal fees and $956.84 legal expenses, clearly is in excess of the cap placed on any allowance by the Court.

For this reason, any further consideration of the Application will be limited to discussion and determination of the allowability of any amount, not as a break-up fee, but as a reimbursement for actual and necessary costs by WBB, which provided benefit to the estates. Thus in turn, this would require this Court to first consider whether the conduct of WWB in the auction process conferred a benefit to the estate and if so, what expenses incurred by WWB would be proper and should be allowed.

There is no dispute that the initial bid to purchase the assets was made by Century, the largest creditor of these two Debtors,

on November 12, 2003. The record reflects that Century filed the NAPMA Asset Purchase Offer with the Court in the NAPMA case. (Doc. No. 80). The record further reveals that after the commencement of the case on November 13, 2003, the Debtors filed their respective Motion to sell all their assets to an auction process. (Doc. No. 81). As stated earlier, the Motion recited inter alia, that WBB submitted a bid as a "stalking horse." It also appears that Fitness expressed an interest to participate in the process. It is clear however, that Fitness was never a qualified bidder and never had the funding to meaningfully participate in the bidding process. Furthermore, whether or not WBB discouraged Fitness to bid is not relevant and had no negative impact on the bidding process. Thus, this Court is satisfied that the contention of Century that WBB rather than conferring a benefit to the estate, chilled the bidding process has no relevance to consider what allowance, if any, could be made to WBB.

This record is clear that WBB was the only other qualified bidder and it vigorously participated in the auction process and, but for its participation in the auction process, the assets could have been sold to Century for $217,304.73, the book value of only NAPMA's assets. Due to the competitive bidding, Century was compelled to increase its bid and ultimately was required to pay $1.66 Million Dollars for the two Debtors' combined assets.

█ Ordinarily, the foregoing would certainly warrant considering the request for allowance by WBB for the reimbursement of expenses incurred in connection with its participation in the auction process. The difficulty regarding this request, as it is presented for this Court's consideration, woefully lacks the clarity necessary to enable the Court to make a proper determination of the allowance, which could be made. Several expenses for legal fees described in the request clearly had nothing to do with the actual and necessary expense incurred by WBB in connection with the auction process. For instance, the law firms are seeking reimbursement of over $30,000 in legal fees for preparing sales documents. The legal expenses are not clearly within the purview of the legal services rendered to WBB concerning its participation in the auction process. Furthermore, sales documents are not prepared by bidders. They are either prepared by the seller or the potential buyer involved. Moreover, these sales documents produced no tangible results, produced no benefit to the estate, it was basically wasted time, and did not contribute one iota to the enhancement of the purchase price ultimately obtained.

█ The law firm is also charging legal fees for services rendered to WBB for DIP financing. This is clearly a nonreimbursable item. First, it had nothing to do with the auction and the sale of the assets and, secondly, this proposed DIP financing never produced any fruit and, therefore, produced no benefit to the estate of the Debtors.

█ In the last analysis the only expenses incurred by WBB which could be allowed are those directly relating to due diligence a bidder had to conduct, such as, review of the sellers books and records in order to evaluate the going concern value of the enterprise. This type of service is usually conducted by accountants whose expenses would be allowed, provided it is reasonable. In the present instance WBB request reimbursement in the amount of $7,055.00 for professional fees and $749.35 in costs. Unfortunately, the request is not documented whatsoever and is not supported by time records or descriptive invoices reflecting the services rendered.

Therefore, no allowance can be made for these items.

 This leaves for consideration WBB's Application for allowance for reimbursement for actual and necessary legal fees incurred. The legal services provided in connection with due diligence ordinarily would be limited to: (1) negotiation and the protection of WBB's interest in the event that WBB attempted to obtain a loan to fund the purchase of the assets of the Debtor, (2) giving advice to WBB as to the requirements of the Bankruptcy Code which governs sales and (3) research concerning the scope and the extent of the protection of the bidder's participation in the auction process if the bidder is successful. Therefore, it may be appropriate to make an allowance of the services rendered which benefited the estate if the amounts being sought by WBB are reasonable.

The time records attached to the Application fail to set forth the total number of hours invoiced for the purported sale related services. Thus, there is no breakdown of the number of hours incurred for several types of services. Therefore, the Application is unclear which fees were actually related to the auction in and of itself.

Considering the totality of the evidence this Court is satisfied that WBB would ordinarily be entitled to reimbursement of expenses actually and necessarily incurred in connection with its participation in the bidding process. However, the supporting documentation is insufficient at this time for this Court to quantify the amount of the allowance which could be made. Thus, if properly documented, WBB would be entitled to the expenses incurred for the auditing firm and the legal fees to the law firms for legal services performed. However, the fees are limited to research governing bankruptcy sales, consideration of possible title problems and the transferability of intellectual property if such would be included in the sale. WBB is not entitled to the legal services rendered for the proposed DIP financing nor for the preparation of the Application for Allowance.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Third Amended Application for Allowance of Break-up Fees and Expenses as an Administrative Expense Claim be, and the same is hereby, disapproved and denied without prejudice. It is further

ORDERED, ADJUDGED AND DECREED that World Black Belt, Inc., will have thirty (30) days from the entry of this Order, to submit detailed timesheets for the allowable compensation for expenses incurred for the auditing firm and the legal fees to the law firms for legal services performed as indicated above.